No. 24-11009

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

—————————————————

**UNITED STATES OF AMERICA.,
Plaintiff/Appellee,**

**v.**

**SAMUEL ARTHUR THOMPSON,
Defendant/Appellant.**

—————————————————

**ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(3:20-cr-00026-BJD-LLL-1)**

—————————————————

**REPLY BRIEF OF THE APPELLANT**

**J.D. Lloyd
The Law Office of J.D. Lloyd, LLC
2320 Arlington Ave. S.
Birmingham, AL 35205
O. 205-538-3340
JDLloyd@JDLloydLaw.com**

*Counsel for Appellant*

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff-Appellee** | ) | |
| | ) | |
| **v.** | ) | **Appeal No. 24-11009** |
| | ) | |
| **SAMUEL ARTHUR THOMPSON,** | ) | |
| **Defendant-Appellant.** | ) | |

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Samuel Arthur Thompson, pursuant to Fed. R. App. P. 26.1, 11th Cir.
R. 26.1-1, and 11th Cir. R. 26.1-2(a) certifies that the following individu-
als have an interest in the outcome of this case:

1.    Brown, D. Rodney, Assistant United States Attorney;

2.    Davis, Hon. Brian J., United States District Court Judge;

3.    Duso, Adam J., Assistant United States Attorney;

4.    Ellickson, Jenny C., Attorney, Criminal Division, United States De-
partment of Justice;

5.    Falzetta, Brenna, Assistant United States Attorney;

6.    Galeotti, Matthew R., Head of the Criminal Division, United States
Department of Justice;

7.    Gershow, Holly L., Assistant United States Attorney;

i

8.  Hernandez, James A., Esq.;

9.  Hoppmann, Karin, former Acting United States Attorney;

10.  Grant, Maurice C., II, Assistant Federal Defender;

11.  Hall, Alec F., Federal Defender, Middle District of Florida;

12.  Handberg, Robert B., United States Attorney, Middle District of Florida;

13.  Harrington, Jennifer M., Assistant United States Attorney;

14.  Jacksonville Jaguars, LLC;

15.  Karase, Kelly, Assistant United States Attorney;

16.  Kehoe, Gregory W., United States Attorney;

17.  Klindt, Hon. James R., United States Magistrate Judge;

18.  Lambert, Hon. Laura L., United States Magistrate Judge;

19.  Lloyd, J.D., CJA appointed counsel for the defendant-appellant on appeal;

20.  Lopez, Maria Chapa, former United States Attorney;

21.  Minor victims whose identities are protected;

22.  Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

23.  Roper, C. Eric, Counsel for Defendant-Appellant;

ii

24.    Taylor, Laura C., Assistant United States Attorney;

25.    Thompson, Samuel A., Defendant-Appellant;

26.    Toomey, Hon. Joel B., United States Magistrate Judge;

27.    Tran, Mai, Assistant United States Attorney,

28.    United States of America, and;

29.    Walsh, Hon. Patrick J., United States Magistrate Judge (C.D. Cal).

# TABLE OF CONTENTS

Certificate of Interested Persons ...............................................................i

Table of Citations .................................................................................. v

Argument.............................................................................................. 1

    I.    The district court should have conducted a second *Faretta* inquiry with Thompson because the initial valid waiver cannot be said to continue under the circumstances presented below ....... 1

    II.    The discovery restrictions imposed on Thompson were unreasonable and violated his Due Process rights to formulate his defense ...................................................................................... 5

    III.    Thompson should have been granted the modest continuance he requested in order to secure expert assistance ........................... 6

    IV.    The district court should have suppressed evidence seized pursuant to warrant that was blatantly defective under *Groh* ..... 10

Conclusion ........................................................................................... 14

Certificate of Compliance ..................................................................... 15

Certificate of Service ............................................................................ 15

# TABLE OF CITATIONS

**Cases**                                                                                    **Page(s)**

*Faretta v. California*, 422 U.S. 806 (1975)................................................1-5

*Groh v. Ramirez*, 540 U.S. 551 (2004)........................................... 10,12,13

*Strozier v. Newsome,* 926 F.2d 1100, 1104-05 (11th Cir. 1991)............... 1

*United States v. Leon*, 468 U.S. 897 (1984) ..................................... 12, 13

*United States v. Owen*, 963 F.3d 1040, (11th Cir. 2020) .......................2-4

*United States v. Rivers*, 134 F.4th 1292 (11th Cir. 2025)...................... 11

**Constitutional Provisions and Statutes**

U.S. Const. amend. VI...................................................................... 1

18 U.S.C. § 3509(m)........................................................................ 6

# ARGUMENT

## I.   The district court should have conducted a second *Faretta* inquiry with Thompson because the initial valid waiver cannot be said to continue under the circumstances presented below.

The United States contends that Thompson was not entitled to a second *Faretta*[1] inquiry after the return of the second superseding indictment. The United States argues the initial 2022 waiver continued to be valid because Thompson was advised of the new penalty ranges at arraignment and he purportedly repeatedly confirmed that he wished to represent himself at trial. But these discussions, standing alone, should not give this Court confidence that Thompson's Sixth Amendment rights were protected here.

The heart of the *Faretta* inquiry is whether this Court believes it can reasonably be said that the record the record "establishes that the defendant understood the risks of self-representation and freely chose to face them." *Strozier v. Newsome,* 926 F.2d 1100, 1104-05 (11th Cir. 1991). Here, this Court should have an undermined confidence in the continued validity of Thompson's initial *Faretta* waiver.

---

[1] *Faretta v. California*, 422 U.S. 806 (1975)

1

Thompson admits that there would certainly be some overlap between the initial and subsequent *Faretta* hearings. Answers to questions involving *Faretta* factors off all factors except for the third factor discussed in *United States v. Owen*, 963 F.3d 1040, 1049 (11th Cir. 2020) wouldn't change from the first to a second *Faretta* hearing, it's this third factor that changed the most and needed careful attention. But even assuming the arraignment cast some light on the third factor by mentioning the maximum sentence, nothing else the United States points out addresses why Thompson's waiver should be considered effective in light of the new substantive charges he faced.

Again, as detailed in Thompson's opening brief, the circumstances of Thompson's case radically changed in the wake of the second superseding indictment adding four substantive charges, two of which were completely new – production of child pornography (Count 4), commission of a felony [Count 4] while a registered a sex offender (Count 5). Doc. 178. Again, the massive increase in the mandatory minimum sentence he would face (from 15 years to 35 years) and the maximum total sentence (220 years), standing alone, should have directed the district court to order another careful *Faretta* inquiry with Thompson. That the maximum

sentence was mentioned in the subsequent arraignment doesn't satisfy *Faretta*'s focus on having a careful inquiry with the defendant to make sure he understands what he faces after the new indictment. Further, while the United States points out occasions that Thompson stated he wanted to continue with self-representation, these statements came in response to logistical issues that came up in connection to Thompson's incarceration. These statements weren't given at the end of discussions exploring his right to self-representation. Nothing about these exchanges can be said to be exploratory of the issues contemplated by the third factor discussed in *Owen*.

The United States puts too much emphasis on Thompson's purported "affirmations" that he wanted to continue representing himself. The context of Thompson's statements is important. Thompson's first purported "reaffirmation" came in the context of his objection to having to conduct an evidentiary hearing in prison jumpsuit and leg shackles. Doc. 194 at 15. While the court asked him if he wished to continue representing himself, Thompson indicated that he was but reiterated the objection to the shackling. *Id*. at 17. The magistrate's question was only connected to the shackling issue, not the heart of a *Faretta* inquiry. Similarly, the next

3

two "reaffirmations" weren't probing questions addressing *Faretta* in the wake of the massive changes in Thompson's case but rather were just rote questions the magistrate appeared to be asking every so often. Later in this same hearing, the magistrate judge asked Thompson if there were any reasons he couldn't continue representing himself, to which Thompson replied in the negative. *Id.* at 85. But this question didn't stem from any development in the hearing – it somewhat arose out of nowhere. The next day the magistrate asked the same question at the outset of the hearing. Doc. 184 at 6. While Thompson again said he wanted to continue representing himself, the problem remains that the courts failed to conduct a meaningful, careful colloquy with Thompson in the wake of the second superseding indictment.

That he made these "reaffirmations" isn't dispositive of the question at hand: can it reasonably be said that Thompson fully understand his rights as guaranteed by *Faretta* in the wake of the substantial change in circumstances? The answer is no. At no point did any judge discuss this critical third *Owen* factor with Thompson after the new charges had been returned by the grand jury. Nothing in the record can show that Thompson understood the nature of the new charges of production of child

4

pornography and commission of a felony (production of child pornography) while a registered a sex offender or possible defenses to the two charges. Other than the sentencing ranges, these two charges hadn't been discussed at all with Thompson. The magistrate in initial *Faretta* colloquy discussed in detail the charges Thompson faced. The record doesn't demonstrate the same detailed discussion took place regarding the new charges – charges that greatly enhanced the minimum penalty Thompson would face upon conviction.

Based on the foregoing, Thompson's circumstances changed in a significant manner that should have led the district court to more carefully examine Thompson about his decision to represent himself at trial. The discussion or admonitions that happened after the second superseding indictment were not sufficient under *Faretta* to give this Court confidence that Thompson's continued waiver of counsel was knowingly, intelligently, and voluntarily given.

**II.    The discovery restrictions imposed on Thompson were unreasonable and violated his Due Process rights to formulate his defense.**

The United States contends that Thompson has not demonstrated that he suffered a viable discovery violation (constitutional or otherwise) or any prejudice from these violations. This is not true.

In his opening brief, Thompson detailed the various ways that United States interpretation of 18 U.S.C. § 3509(m) severely limited his ability to prepare his defense. *See Brief of the Appellant*, at pg. 30-32. Thompson explained how the restrictions prevented him from viewing files in their native form, forcing him to prepare his case the through the lens of the forensic software. He explained that this organization made the massive number of files unsearchable as he prepared for his case. He further explained that he didn't have free access to files that merely contained "indicia" of child pornography as opposed to actual child pornography.

These restrictions were not meaningless. They severely limited Thompson's ability to investigate his case and formulate his theory of defense. Accordingly, Thompson suffered prejudice from these discovery violations that rise to the level of warranting a new trial.

### III.   Thompson should have been granted the modest continuance he requested in order to secure expert assistance.

The United States argues Thompson has failed to show prejudice when the district court unreasonably and arbitrarily denied him meaningful

access to expert assistance at trial. The United States' argument isn't well founded given the United States needed several experts versed in computer forensics and forensic investigations to make its case against Thompson.

Initially, this Court should take notice of the United States' version of the facts presented at trial, its reliance on expert testimony, and Thompson's dearth of a developed theory of the defense case in response to the substantial forensics shown to the jury. The United States would have this Court believe the evidence was simply overwhelming and that there was no response to its allegations. But this simply isn't true. Thompson diligently sought expert assistance for his case, and he repeatedly explained how an expert would review the discovery in his case and help him formulate his theories of defense. *See* Doc. 122 (*ex parte*); Doc. 130 (*ex parte*); Doc. 144 (*ex parte*); Doc. 198 (*ex parte*); Doc. 207 (*ex parte*). Thompson simply wasn't given a meaningful opportunity to hire the expert needed for a fair trial – a determination made by the district court in January 2023 approximately 10 months before trial. As such, this Court should look at the State's factual allegations and the lack of challenge at trial by the defense **not** as Thompson having no answer to the

7

United States' charges. This Court should view the imbalance for what it was: an unfair fight.

As outlined in Thompson's opening brief, the district court unreasonably and arbitrarily denied Thompson funding for an expert in the months leading up to trial. On January 12, 2023, the district court granted Thompson's funding request, finding that hiring an expert was necessary for a fair trial. Doc. 160 (sealed). Thompson withdrew this request almost immediately because he anticipated the return of the second superseding indictment, but he renewed the request for a different expert (Richard Connor) in April 2023 once he had a better sense of where his defense needed to go. Doc. 198 (*ex parte*). The district court should have granted this request immediately as Thompson surely continued to have a need for an expert in order to have a fair trial. His need hadn't changed from January 2023 to April 2023. Yet, the district court sat on this motion for two more months, denied it, and wouldn't grant a renewed request regarding Connor (Doc. 207 (*ex parte*)) until On September 25, 2023 – barely one month before the start of trial. Doc. 217 (sealed). Clearly, the district court could have granted the April 2023 request based upon the court's knowledge of what Thompson needed and was trying to do,

coupled with its prior determination that Thompson needed this expert in order to insure a fair trial. While the United States argues that "[Thompson] bore principal responsibility for any shortening of [his] preparation time," the record simply doesn't support that conclusion. *United States Brief* at 42.

This Court should find that the district court's handling of Thompson's reasonable and necessary funding requests is the major contributing factor to Thompson's ultimate need for expert assistance at trial. Even if Thompson could or should have been more specific about why he was asking for Connor to serve as an expert as opposed to Mulholland (who was approved to be an expert for his defense in the January 2023 order), the district court had ample information in front of it about Thompson's explanation for his need of an expert as well as Connor himself to approve the request in April 2023.

Finally, Thompson has explained (and the record plainly demonstrates) the prejudice Thompson faced by not having expert assistance at trial. Expert computer forensic testimony served as the cornerstone of the United States' case against Thompson. The United States needed several experts to make its case. Thompson should have been afforded one

with meaningful time to prepare his defense. Accordingly, the circuit court abused its discretion in denying Thompson meaningful expert assistance.

## IV.  The district court should have suppressed evidence seized pursuant to warrant that was blatantly defective under *Groh.*

The United States contends that the warrant in question isn't due to be suppressed under *Groh v. Ramirez*, 540 U.S. 551 (2004) or the Good-Faith doctrine. Neither argument is persuasive.

Initially, Thompson reiterates that the critical attachments were not appended to the warrant left at Thompson's house and the district court erred in concluding otherwise. The United States argues that the question of whether the complete warrant with the proper attachments was left at the house was nothing more than a credibility determination for the magistrate to make. *United States Brief* at pg. 52-53. But this simply isn't true. Agent Norris testified that (1) it wasn't FBI policy to give the affidavit of probable cause to the subject of the search warrant, (2) that during the search Thompson told him that the warrant he was handed "doesn't tell [him] why you're here,"; (3) that the picture of the warrant on the table was the warrant that was actually left; and (4) that he wasn't

10

the agent who put the warrant on the table. Doc. 194 at 70, 75, 76, 206, 207; Doc. 208. Agent Norris' testimony cannot be interpreted as an unequivocal affirmation that Attachments A and B were appended to the warrant.

Further, the picture of the warrant left at Thompson's house clearly shows a two-page document and the attachments were much longer than that. *See Thompson Brief* at pg. 51 (citing Doc. 194 at 70; and Doc. 208). The accompanying attachments, however, were multiple pages long. *See* Doc. 132-4. Clearly, they aren't contained in the document left at Thompson's house. Thus, the question of whether the attachments were appended to the warrant isn't purely a question of whether the court should believe Thompson or Agent Norris. The documentary evidence presented to the court should have resolved that question in Thompson's favor. The district court clearly erred in finding that the attachments were appended to this warrant. *See United States v. Rivers*, 134 F.4th 1292, 1302 (11th Cir. 2025).

Moreover, the United States' arguments about are unavailing. The argument presented below isn't merely an argument about the what Thompson was presented the day of the search. The question was

11

whether the warrant purportedly authorizing the search was sufficient under the Fourth Amendment. It was not.

In *Groh* the United States Supreme Court found a warrant "plainly invalid" when the warrant did not (1) explicitly describe the things to be seized pursuant to the warrant, or (2) include both (A) a proper reference to an attachment describing the things to be seized, and (B) the attachment itself. *Groh*, 540 U.S. at 557. The Court focused on the warrant itself, not the process followed to obtain the warrant. *Id*. The Court explained that, "[t]he fact that the *application* [for the warrant] adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity" because "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id*. Thompson's warrant failed to meet these requirements.

Further, the Good Faith exception shouldn't apply here. In *United States v. Leon*, the Supreme Court held that evidence obtained pursuant to a search warrant obtained and executed in good faith should not be suppressed. *United States v. Leon*, 468 U.S. 897, 922 (1984). But obtaining and executing a warrant in good faith does not create an impenetrable shield because the officer's reliance on the warrant "must be

12

objectively reasonable." *Id.* The present circumstances squarely falls within one of the exceptions to Good Faith: situations where the warrant is clearly facially deficient. *See Leon*, 468 U.S. at 923 ("Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. *Cf. Massachusetts v. Sheppard*, 468 U.S., at 988–991, 104 S.Ct., at 3428–3430.") The warrant was deficient on its face, and, as such, it was unreasonable for the officers to rely on it.

Accordingly, the fruits of this search warrant were due to be suppressed under *Groh*.

13

## CONCLUSION

Based on the foregoing, Thompson respectfully requests this Court reverse his convictions and remand for new proceedings.

Respectfully submitted on July 24, 2025.

<u>/s J.D. Lloyd</u>
J.D. Lloyd
Law Office of J.D. Lloyd, LLC
2320 Arlington Ave. S.,
Birmingham, AL 35205
(205) 538-3340
JDLloyd@JDLloydLaw.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I certify this brief contains <u>2,537</u> words and thus complies with the type-volume limitations of 11th Cir. Rule 22-2 and Rule 32(a)(7)(B)(i), Fed. R. App. P. I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). The brief was prepared in 14-point Century Schoolbook.

<u>/s J.D. Lloyd</u>
J.D. Lloyd

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed a copy of the Appellant's brief with the Clerk of the Court on July 24, 2025, using the EM/ECF system, which will provide notice of the filing to all counsel of record

<u>/s J.D. Lloyd</u>
J.D. Lloyd

*Counsel for Appellant*

15